**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DAVID M. CURTIN,                          ) Case No. EDCV 14-2551-JPR
                                          )
                    Plaintiff,            )
                                          )
          v.                              ) **MEMORANDUM OPINION AND ORDER**
                                          ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting                 )
Commissioner of Social                    )
Security,                                 )
                                          )
                    Defendant.            )
                                          )

**I.    PROCEEDINGS**

     Plaintiff seeks review of the Commissioner's final decision

denying his application for Social Security disability insurance

benefits ("DIB").  The parties consented to the jurisdiction of

the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).

The matter is before the Court on the parties' Joint Stipulation,

filed November 23, 2015, which the Court has taken under

submission without oral argument.  For the reasons stated below,

the Commissioner's decision is affirmed.

1

**II.   BACKGROUND**

Plaintiff was born in 1964.  (Administrative Record ("AR") 29, 188.)  He has a college education, is able to communicate in English, and worked as a banquet manager and waiter.  (AR 29, 83.)

In October 2011, Plaintiff filed a claim for DIB, alleging that he had been unable to work since October 6, 2008, because of short-term memory loss, Parkinson's disease, arthritis, back problems, anxiety, bipolar disorder, and seizures.  (AR 18, 118, 214).  After his applications were denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 18, 138.)  A hearing was held by videoconference on May 30, 2013.  (AR 39-85.)  Plaintiff, who was represented by counsel, testified, as did Plaintiff's wife and a vocational expert.  (Id.)  In a written decision issued on July 19, 2013, the ALJ found Plaintiff not disabled.  (AR 18-31.)  On October 16, 2014, the Appeals Council denied Plaintiff's request for review.  (AR 1.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

2

1  It is more than a scintilla but less than a preponderance.

2  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

3  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether

4  substantial evidence supports a finding, the reviewing court

5  "must review the administrative record as a whole, weighing both

6  the evidence that supports and the evidence that detracts from

7  the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,

8  720 (9th Cir. 1996).   "If the evidence can reasonably support

9  either affirming or reversing," the reviewing court "may not

10  substitute its judgment" for the Commissioner's.   Id. at 720-21.

11  **IV.   THE EVALUATION OF DISABILITY**

12       People are "disabled" for purposes of receiving Social

13  Security benefits if they are unable to engage in any substantial

14  gainful activity owing to a physical or mental impairment that is

15  expected to result in death or has lasted, or is expected to

16  last, for a continuous period of at least 12 months.   42 U.S.C.

17  § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

18  1992).

19       A.   The Five-Step Evaluation Process

20       The ALJ follows a five-step sequential evaluation process to

21  assess whether a claimant is disabled.   20 C.F.R.

22  § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th

23  Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the

24  Commissioner must determine whether the claimant is currently

25  engaged in substantial gainful activity; if so, the claimant is

26  not disabled and the claim must be denied.   § 404.1520(a)(4)(i).

27       If the claimant is not engaged in substantial gainful

28  activity, the second step requires the Commissioner to determine

3

1    whether the claimant has a "severe" impairment or combination of
2    impairments significantly limiting his ability to do basic work
3    activities; if not, the claimant is not disabled and his claim
4    must be denied.  § 404.1520(a)(4)(ii).

5          If the claimant has a "severe" impairment or combination of
6    impairments, the third step requires the Commissioner to
7    determine whether the impairment or combination of impairments
8    meets or equals an impairment in the Listing of Impairments
9    ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix
10   1; if so, disability is conclusively presumed.
11   § 404.1520(a)(4)(iii).

12         If the claimant's impairment or combination of impairments
13   does not meet or equal an impairment in the Listing, the fourth
14   step requires the Commissioner to determine whether the claimant
15   has sufficient residual functional capacity ("RFC")[1] to perform
16   his past work; if so, he is not disabled and the claim must be
17   denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of
18   proving he is unable to perform past relevant work.  Drouin, 966
19   F.2d at 1257.  If the claimant meets that burden, a prima facie
20   case of disability is established.  Id.

21         If that happens or if the claimant has no past relevant
22   work, the Commissioner then bears the burden of establishing that
23   the claimant is not disabled because he can perform other
24   substantial gainful work available in the national economy.
25   § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257.  That

26   _____

27         [1] RFC is what a claimant can do despite existing exertional
     and nonexertional limitations.  § 404.1545; see Cooper v.
28   Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

                                    4

determination comprises the fifth and final step in the sequential analysis.  § 404.1520(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, October 6, 2008.  (AR 20.)  At step two, he found that Plaintiff had the following severe impairments: "Parkinson's disease; seizure-like disorder; left shoulder strain; cognitive disorder, not otherwise specified; bipolar disorder, not otherwise specified; and generalized anxiety disorder."  (AR 20-21.)  At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 21.)  At step four, the ALJ found that Plaintiff had the RFC to perform light work with additional restrictions:

> [T]he claimant can lift and/or carry 20 pounds
> occasionally and 10 pounds frequently; he can stand
> and/or walk for six hours out of an eight-hour workday
> with regular breaks; he cannot climb ladders, ropes or
> scaffolds; he can occasionally climb ramps and stairs; he
> can occasionally balance, stoop, kneel, crouch, and
> crawl; he cannot perform overhead reaching with the left
> upper extremity; he can perform frequent fine
> manipulation with the bilateral upper extremities; he
> should avoid all exposure to hazards; he should avoid
> even moderate exposure to vibrations; and he is limited
> to work involving simple repetitive tasks.

(AR 22-23.)  The ALJ determined that Plaintiff could not perform

his past relevant work.  (AR 29.)  At step five, based on the

VE's testimony, the ALJ concluded that Plaintiff could perform

jobs existing in significant numbers in the national economy.

(AR 29-30.)  Accordingly, he found Plaintiff not disabled.  (AR

30.)

**V.   DISCUSSION**

Plaintiff contends the ALJ erred in determining his RFC and

in assessing his credibility.

A.   The ALJ Properly Assessed Plaintiff's RFC

Plaintiff contends that the ALJ's RFC assessment is not

supported by substantial evidence because the ALJ failed to

properly consider the opinions of examining doctors Banafshe

Ardebili and Mark McDonough.  (J. Stip. at 5-9, 15-18.)  For the

reasons discussed below, remand is not warranted.

1.   Applicable law

A district court must uphold an ALJ's RFC assessment when

the ALJ has applied the proper legal standard and substantial

evidence in the record as a whole supports the decision.  Bayliss

v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must

consider all the medical evidence in the record and "explain in

[his] decision the weight given to . . . [the] opinions from

treating sources, nontreating sources, and other nonexamining

sources."  § 404.1527(e)(2)(ii); see also § 404.1545(a)(1) ("We

will assess your residual functional capacity based on all the

relevant evidence in your case record."); SSR 96-8p, 1996 WL

374184, at *2 (July 2, 1996) (RFC must be "based on all of the

relevant evidence in the case record").  In determining the RFC,

the ALJ may consider those limitations for which there is support

6

1  in the record and need not consider properly rejected evidence or

2  subjective complaints.  See Bayliss, 427 F.3d at 1217 (upholding

3  ALJ's RFC determination because "the ALJ took into account those

4  limitations for which there was record support that did not

5  depend on [claimant's] subjective complaints"); Batson v. Comm'r

6  of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not

7  required to incorporate into RFC those findings from treating-

8  physician opinions that were "permissibly discounted").  The

9  Court must consider the ALJ's decision in the context of "the

10 entire record as a whole," and if the "'evidence is susceptible

11 to more than one rational interpretation,' the ALJ's decision

12 should be upheld."  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194,

13 1198 (9th Cir. 2008) (citations omitted).

14     Three types of physicians may offer opinions in Social

15 Security cases: (1) those who directly treated the plaintiff, (2)

16 those who examined but did not treat the plaintiff, and (3) those

17 who did neither.  Lester, 81 F.3d at 830.  A treating physician's

18 opinion is generally entitled to more weight than an examining

19 physician's, and an examining physician's opinion is generally

20 entitled to more weight than a nonexamining physician's.  Id.

21     This is true because treating physicians are employed to

22 cure and have a greater opportunity to know and observe the

23 claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

24 If a treating physician's opinion is well supported by medically

25 acceptable clinical and laboratory diagnostic techniques and is

26 not inconsistent with the other substantial evidence in the

27 record, it should be given controlling weight.  § 404.1527(c)(2).

28 If a treating physician's opinion is not given controlling

weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.   § 404.1527(c)(2)-(6).

When a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.   See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31).   When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.   Id. (citing Lester, 81 F.3d at 830-31).   Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."   Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); accord Batson, 359 F.3d at 1195.

### 2.   Relevant background

#### a.   *Dr. Ardebili*

On January 10, 2012, Dr. Ardebili, a clinical psychologist, performed a complete psychological evaluation of Plaintiff at the state agency's request.   (AR 505-13.)   As part of the evaluation, Dr. Ardebili reviewed Plaintiff's medical records, which showed a history of cognitive memory impairment associated with multiple concussions, bipolar disorder, and anxiety.   (AR 506-07.)   In October 2008, Plaintiff was treated for an altered level of consciousness and symptoms secondary to his use of multiple antipsychotic medications.   (AR 506.)   Dr. Ardebili noted that Plaintiff "was reported to have needed to be weaned off

8

medications," but he was still taking numerous antipsychotic
medications at the time of his examination.  (AR 506, 510.)

Dr. Ardebili also performed a mental-status examination and
administered psychological tests.  (AR 508-12.)  During the
examination, she noted that Plaintiff's mood was depressed and
anxious and his affect was dysphoric.  (AR 508.)  Dr. Ardebili
found that Plaintiff's recent and immediate memory were impaired.
(AR 509.)  Plaintiff's attention and concentration were
moderately impaired, with moderate distractibility, and his
insight and judgment were impaired for his chronological age.
(Id.)  Based on testing and clinical observations, Dr. Ardebili
concluded that Plaintiff had cognitive deficits, an impaired
working memory, and deficits in processing speed and overall
pace.  (AR 510-11.)  She diagnosed "cognitive disorder, not
otherwise specified," "bipolar disorder, not otherwise
specified," "generalized anxiety disorder," and "alcohol abuse,
early full remission."  (AR 512.)  She assessed Plaintiff with a
global assessment of functioning ("GAF") score of 59.[2]  (Id.)

Dr. Ardebili opined that Plaintiff demonstrated "the ability

---

[2] A GAF score of 51 to 60 indicates moderate symptoms or
difficulty in social, occupational, or school functioning.  See
Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")
34 (revised 4th ed. 2000).  The Commissioner has declined to
endorse GAF scores, Revised Medical Criteria for Evaluating
Mental Disorders and Traumatic Brain Injury, Fed. Reg. 50764-65
(Aug. 21, 2000) (codified at 20 C.F.R. pt. 404) (GAF score "does
not have a direct correlation to the severity requirements in our
mental disorders listings"), and the most recent edition of the
DSM "dropped" the GAF scale, citing its lack of conceptual
clarity and questionable psychological measurements in practice.
Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed.
2012).

to understand, remember and carry out short, simple
instructions." (<u>Id.</u>)  He had a "mild inability to make
simplistic work-related decisions without special supervision,"
but he had "the ability to accept instructions from supervisors."
(AR 512-13.)  Dr. Ardebili further opined that Plaintiff had
"moderate inability to maintain attention and concentration,"
"moderate inability to maintain persistence and pace," and "mild
inability to maintain day-to-day activities, including attendance
and safety."  (AR 513.)   Plaintiff had a "mild inability to
interact appropriately with supervisors, coworkers and peers."
(<u>Id.</u>)  Dr. Ardebili recommended mental-health treatment and
advised that medication discontinuance or noncompliance could
lead to further deterioration in functioning.  (<u>Id.</u>)

     In his decision, the ALJ accorded "great weight" to Dr.
Ardebili's opinion.  (AR 28.)  The ALJ noted that she personally
observed and examined Plaintiff and that her opinion was
consistent with the objective clinical findings.  (<u>Id.</u>)  Based on
Dr. Ardebili's findings, the ALJ limited Plaintiff to simple,
repetitive tasks.  (AR 23, 28.)

                    *b.   Dr. McDonough*

     On June 28, 2013, Dr. McDonough, a neuropsychologist,
completed a neuropsychological evaluation of Plaintiff at the
request of Plaintiff's attorney.  (AR 561-70.)  Plaintiff was
pleasant but presented with anxiety.  (AR 563, 569.)  Dr.
McDonough discussed Plaintiff's history of numerous head injuries
associated with loss of consciousness, grand-mal-seizure-like
events, and complaints of chronic pain.  (AR 562-63.)  Test
results revealed diffuse cognitive impairment; moderately

                              10

impaired grip strength in the right dominant hand; low average performance on tasks involving serial connection of numbers in a sequence; impaired concentration, attention, and memory; and average intellectual functioning. (AR 564, 566-67, 569.) Dr. McDonough diagnosed Plaintiff with amnestic disorder, cognitive disorder, mild cognitive impairment, and generalized anxiety disorder, with a psychological GAF score of 62[3] and a neuropsychological GAF score of 55. (AR 570.)

On July 1, 2013, Dr. McDonough completed a mental residual-functional-capacity assessment. (AR 572-75.) Dr. McDonough opined that Plaintiff could not work on a regular and sustained basis in light of his mental impairments. (AR 575.) Specifically, he found that Plaintiff's impairments would substantially interfere with his ability to work on a sustained basis at least 20 percent of the time and that Plaintiff would need to miss work on account of his impairments or treatment up to 15 days a month. (Id.) Dr. McDonough also circled answers indicating that Plaintiff was not limited in the ability to carry out very short and simple instructions and had "mild" limitations in his ability to understand and remember very short and simple as well as detailed instructions. (AR 572.) Plaintiff had "moderate" limitations in his ability to remember locations and worklike procedures, understand and remember detailed instructions, maintain attention and concentration for extended

---

[3] A GAF score of from 61 to 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV 34.

periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, and interact appropriately with the general public.  (AR 572-74.)  Plaintiff had "moderate" to "marked" limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR 574.)  Plaintiff had "marked" limitations in the ability to tolerate normal levels of stress and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 574-75.)  Dr. McDonough found that Plaintiff was "not ratable" in nine other areas of functioning.  (Id.)

The ALJ gave little weight to Dr. McDonough's opinion of disability, finding that it had been generated in response to attorney referral and was brief, conclusory, and inadequately supported by clinical findings, inconsistent with the objective medical evidence as a whole, and inconsistent with Plaintiff's admitted daily activities.  (AR 28-29.)

3.   Analysis

a.   *Dr. Ardebili*

Plaintiff contends that despite crediting Dr. Ardebili's opinion, the ALJ's RFC finding does not reflect his "moderate" limitations in the ability to maintain attention, concentration, persistence, and pace.  (AR 512-13; J. Stip. at 6, 15-16.)

Contrary to Plaintiff's contention, the ALJ's RFC assessment for simple, repetitive tasks was consistent with the limitations

Dr. Ardebili assessed.  This case is controlled by Stubbs-Danielson v. Astrue, in which the Ninth Circuit found that an ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated medical-opinion evidence that the claimant had a "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaption." 539 F.3d 1169, 1173-74 (9th Cir. 2008).

In Stubbs-Danielson, two doctors assessed the claimant with moderate limitations in mental functioning.  Id. at 1173.  An examining doctor found that the claimant was "moderately limited" in the ability "to perform at a consistent pace without an unreasonable number and length of rest periods" but did not assess whether she could perform unskilled work on a sustained basis.  Id.  A state-agency reviewing psychologist identified the claimant's limitation in pace as well as moderate limitations in several other areas of mental functioning but also found the claimant capable of carrying out "simple tasks."  Id.  Based on this opinion evidence, the ALJ assessed the claimant with an RFC for simple, routine, repetitive work and did not include any moderate limitations in pace or other mental areas of functioning in the hypothetical to the vocational expert.  Id. at 1171, 1173-74.  In doing so, the ALJ did not reject the doctors' findings of moderate limitations in pace and other areas of mental functioning.  Id. at 1174.  Rather, the ALJ reasonably "translated" the claimant's condition, "including the pace and mental limitations, into the only concrete restrictions available to him — [the state-agency reviewing psychologist's] recommended restriction to 'simple tasks.'"  Id. (citing Howard v. Massanari,

13

255 F.3d 577, 582 (8th Cir. 2001) (when state psychologist both identified claimant as having deficiencies of concentration, persistence, or pace and pronounced that claimant possessed ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration, persistence, or pace), and Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001) (when ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace)).

Here as in Stubbs-Danielson, the ALJ's limitation to "simple repetitive tasks" in the RFC was consistent with the other restrictions identified in the medical evidence.  Although Dr. Ardebili opined that Plaintiff had moderate limitations in the ability to maintain attention, concentration, persistence, and pace, she nonetheless concluded that Plaintiff retained the ability to "understand, remember, and carry out short, simple instructions."  (AR 512-13.)  Given these findings, the ALJ reasonably translated the moderate deficiencies assessed by Dr. Ardebili into the RFC assessment for "simple repetitive tasks." See Stubbs-Danielson, 539 F.3d at 1174.  The ALJ did not err in failing to include express limitations in attention, concentration, persistence, and pace in the RFC.  See id.; see also Hughes v. Colvin, 599 F. App'x 765, 766 (9th Cir. 2015)

(ALJ's RFC assessment accounted for moderate difficulties in social functioning, concentration, and persistence by restricting the claimant to simple, routine, repetitive tasks in job where she could work independently, with no more than occasional public interaction); Sabin v. Astrue, 337 F. App'x 617, 620-21 (9th Cir. 2009) (ALJ properly assessed medical evidence in determining that despite moderate difficulties in concentration, persistence, or pace, claimant could perform simple and repetitive tasks on consistent basis); Rodriquez v. Colvin, No. 1:13-CV-01716-SKO, 2015 WL 1237302, at *6 (E.D. Cal. Mar. 17, 2015) ("a moderate limitation in the ability to complete a workday or workweek without interruption is consistent with and properly captured by a limitation to simple repetitive tasks"); McLain v. Astrue, No. SACV 10-1108 JC, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011) ("[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks" (citations omitted)).

Plaintiff cites Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211, 212 (9th Cir. 2009), for the proposition that a restriction to "simple, repetitive work" fails to include moderate functional limitations in concentration, persistence, or pace. (J. Stip. at 6, 16); see also Brink v. Comm'r of Soc. Sec. Admin., 599 F. App'x 657 (9th Cir. 2015) (reversing affirmance of Commissioner because ALJ did not follow law of case on remand). In Brink, the ALJ accepted medical evidence that the claimant had moderate difficulty maintaining concentration, persistence, or pace but did not include those limitations in the hypothetical presented to the VE. 343 F. App'x at 212. Instead, the ALJ

mentioned only a limitation for simple, repetitive work.  <u>Id.</u>
The court held that the hypothetical was incomplete because it
did not specifically include the limitation for concentration,
persistence, or pace.  <u>Id.</u>  The court rejected the Commissioner's
contention that the limitation to simple, repetitive work
encompassed the claimant's difficulties with concentration,
persistence, and pace.  <u>Id.</u>  Although <u>Stubbs-Danielson</u> had
reached the opposite conclusion, the court attempted to
distinguish it.  The court explained that in the case before it,
there was medical evidence that the claimant had difficulties in
concentration, persistence, or pace, whereas in <u>Stubbs-Danielson</u>,
the medical testimony did not establish any limitations in
concentration, persistence, or pace.  <u>Id.</u>

     <u>Brink</u> does not establish error in the ALJ's RFC assessment
here.  First, <u>Brink</u> is not the law, whereas <u>Stubbs-Danielson</u> is.
<u>See</u> 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of
the Court are not precedent. . . .").  Second, under that law,
the ALJ was not required to explicitly identify in the RFC the
moderate limitations Dr. Ardebili assessed.  The restriction to
simple, repetitive tasks adequately captured the moderate
deficiencies identified by Dr. Ardebili.  <u>See</u> <u>Stubbs-Danielson</u>,
539 F.3d at 1174.  Third, <u>Brink</u>'s conclusion that there was no
medical testimony of limitations in concentration, persistence,
and pace in <u>Stubbs-Danielson</u>, <u>see</u> <u>Brink</u>, 343 F. App'x at 212,
overlooks express language in <u>Stubbs-Danielson</u> to the contrary.
<u>See</u> <u>Stubbs-Danielson</u>, 539 F.3d at 1171 ("Dr. Bryce A. McCollum
evaluated Stubbs-Danielson and . . . said she showed . . . a slow
pace in thought and action"), 1173 (recounting similar findings

16

by Dr. McCollum and another doctor's finding that she had "a slow pace, both in thinking & actions"), 1174 (summarizing doctors' findings "related to pace and the other mental limitations regarding attention, concentration, and adaption"). See Calisti v. Colvin, No. 1:14-CV-02000-SKO, 2015 WL 7428724, at *9 (E.D. Cal. Nov. 23, 2015) ("[d]istinguishing Stubbs-Danielson on the ground that there was no evidence of functional limitation in concentration, persistence, and pace is not persuasive"). Consistent with the medical evidence in the record and Stubbs-Danielson, the ALJ properly translated Plaintiff's moderate limitations into the RFC for simple, repetitive work.  539 F.3d at 1173-74.  Thus, the reasoning offered in Brink to distinguish Stubbs-Danielson is not persuasive.  For all these reasons, the ALJ did not err in determining Plaintiff's mental RFC.[4]

---

[4] Plaintiff also contends that the ALJ's hypothetical to the VE was incomplete and he therefore erred in relying on the VE's testimony. (J. Stip. at 6, 16); see Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (if hypothetical to VE does not reflect all of claimant's limitations, then VE's testimony "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy" (citation omitted)).  As discussed, the ALJ's RFC determination adequately incorporated Dr. Ardebili's assessment.  Because the ALJ's hypothetical to the VE included the same limitations as those in the RFC determination – "simple repetitive tasks" (AR 76) – he properly relied on the VE's testimony in finding Plaintiff capable of performing other work (AR 30, 76-77).  Thus, Plaintiff is not entitled to remand on this ground.

1                           *b.   Dr. McDonough*

2          The ALJ gave "little weight" to Dr. McDonough's opinion that

3     Plaintiff's limitations would preclude work at the level of

4     substantial gainful activity.  (AR 28, 574-75.)  This opinion was

5     contradicted by Dr. Ardebili, who assessed Plaintiff with the

6     ability to understand, remember, and carry out short, simple

7     instructions.  (AR 512-13.)  Thus, the ALJ was required to give

8     only specific and legitimate reasons supported by substantial

9     evidence for discounting Dr. McDonough's opinion, <u>see</u> <u>Carmickle</u>,

10    533 F.3d at 1164, which he did.

11         The ALJ properly accorded Dr. McDonough's opinion little

12    weight because it was "brief, conclusory, and inadequately

13    supported by clinical findings."  (AR 28.)  The assessment form

14    contained preprinted levels of functioning such as "none,"

15    "mild," "moderate," "marked," "extreme," and "not ratable," which

16    Dr. McDonough circled without explanation.  (AR 573-75.)  Such

17    conclusory findings were inadequate to support the limitations he

18    assessed.  <u>See</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir.

19    2012) (ALJ may "permissibly reject check-off reports that do not

20    contain any explanation of the bases of their conclusions"

21    (alterations and citation omitted)); <u>Batson</u>, 359 F.3d at 1195

22    ("an ALJ may discredit treating physicians' opinions that are

23    conclusory, brief, and unsupported by . . . objective medical

24    findings").  While Dr. McDonough referenced his

25    neuropsychological evaluation report to support his opinion that

26    Plaintiff lacked the ability to work on a regular and sustained

27    basis, the ALJ found that his opinion was inconsistent with the

28    objective medical evidence as a whole.  (AR 28.)  Plaintiff had a

                                    18

history of multiple concussions and presented with anxiety (AR 569), but diagnostic studies of Plaintiff's brain were unremarkable (AR 298, 309, 337, 472), mental-status examinations conducted in January 2012 and February 2013 were relatively normal (AR 26, 541), and test results indicated reasonably average intellectual functioning (AR 567-69).  Dr. McDonough himself reported that clinical data suggested psychological dysfunction of only "mild to moderate severity" and assessed Plaintiff with a psychological GAF score of 62, indicating only mild symptoms.  (AR 27, 568, 570); see DSM-IV 34.  Inconsistency between Dr. McDonough's findings and the objective evidence in the record, including his own evaluation, was a proper basis for the ALJ to reject Dr. McDonough's findings.  See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (doctor's opinion properly rejected when treatment notes "provide no basis for the functional restrictions he opined should be imposed on [claimant]"); Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between physician's opinion and evidence in record, including his own treatment notes, constituted specific and legitimate reason for rejecting physician's opinion).

    The ALJ was also entitled to reject Dr. McDonough's assessment of extreme limitations because they were inconsistent with Plaintiff's reported activities of daily living.  (AR 28); see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ's finding that doctor's "restrictions appear to be inconsistent with the level of activity that [plaintiff] engaged in by maintaining a household and raising two young children,

with no significant assistance from her ex husband," was specific and legitimate reason for discounting opinion); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 601–02 (9th Cir. 1999) (ALJ permissibly rejected treating physician's opinion when it conflicted with plaintiff's activities); <u>see also</u> <u>Fisher v. Astrue</u>, 429 F. App'x 649, 652 (9th Cir. 2011) (conflict between doctor's opinion and claimant's daily activities was specific and legitimate reason to discount opinion).  As discussed in more detail below, Plaintiff acknowledged that he frequently engaged in a variety of activities, such as going to the gym, attending his children's sports activities, socializing with other parents, running errands with his wife, helping at school, making meals, doing laundry, and helping his children with homework.  (AR 62, 66, 242-44, 246.)  Plaintiff also reported in December 2011 that his ability to handle stress was "fine" since he began taking medication.  (AR 248.)  Yet Dr. McDonough opined that Plaintiff's mental impairments would cause Plaintiff to miss work up to 15 days a month, preclude work on a regular and sustained basis, and result in "marked" limitations in the ability to tolerate normal stress.  (AR 575.)  His findings were inconsistent with Plaintiff's daily activities.

Further, the ALJ rejected Dr. McDonough's assessment because it was "an opinion on an issue reserved to the Commissioner." (AR 28, 570, 575.)  To the extent Dr. McDonough was stating that Plaintiff was disabled or unable to work, the ALJ properly discounted his opinion.  <u>See</u> § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.");  SSR

96-5p, 1996 WL 374183, at *5 (July 2, 1996) (treating-source opinions that person is disabled or unable to work "can never be entitled to controlling weight or given special significance").

The ALJ also discounted Dr. McDonough's opinion because it was rendered through attorney referral "in an effort to generate evidence for the hearing." (AR 28.)  However, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick, 157 F.3d at 726; accord Case v. Astrue, 425 F. App'x 565, 566 (9th Cir. 2011).  As discussed, the ALJ cited other evidence that undermined the credibility of Dr. McDonough's opinion, and therefore his questioning of the purpose behind his report was not improper. See Saelee v. Chater, 94 F.3d 520, 522-23 (9th Cir. 1996) (per curiam).  But even if the ALJ's reliance on the purpose of Dr. McDonough's opinion was error, it was harmless in light of the ALJ's other specific and legitimate reasons for rejecting his report.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

Accordingly, Plaintiff is not entitled to remand on this ground.[5]

---

[5] Plaintiff complains that the ALJ did not identify which of Dr. McDonough's opinions he did not find credible or what medical evidence contradicted them. (J. Stip. at 17.)  But the ALJ specifically referred to Dr. McDonough's assessed "functional limitations" at AR 573-75 and said they were undermined by "normal diagnostic studies" and lack of evidence of neurological or mental deficits upon examination, and he provided

(continued...)

1          B.   <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

2          Plaintiff contends that the ALJ failed to provide clear and

3   convincing reasons for discounting his credibility.  (J. Stip. at

4   18-23, 29-30.)  For the reasons discussed below, the ALJ did not

5   err.

6          1.   <u>Applicable law</u>

7          An ALJ's assessment of symptom severity and claimant

8   credibility is entitled to "great weight."  <u>See</u> <u>Weetman v.</u>

9   <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); <u>Nyman v.</u>

10  <u>Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24,

11  1986).  "[T]he ALJ is not 'required to believe every allegation

12  of disabling pain, or else disability benefits would be available

13  for the asking, a result plainly contrary to 42 U.S.C.

14  § 423(d)(5)(A).'"  <u>Molina</u>, 674 F.3d at 1112 (quoting <u>Fair v.</u>

15  <u>Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989)).

16         In evaluating a claimant's subjective symptom testimony, the

17  ALJ engages in a two-step analysis.  <u>See</u> <u>Lingenfelter</u>, 504 F.3d

18  at 1035-36.  "First, the ALJ must determine whether the claimant

19  has presented objective medical evidence of an underlying

20  impairment '[that] could reasonably be expected to produce the

21  pain or other symptoms alleged.'"  <u>Id.</u> at 1036 (quoting <u>Bunnell</u>

22  <u>v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  If

23  such objective medical evidence exists, the ALJ may not reject a

24  claimant's testimony "simply because there is no showing that the

25  impairment can reasonably produce the <u>degree</u> of symptom alleged."

26

27  ──────────────────

28       [5] (...continued)
    corresponding citations to the record.  (AR 28.)

                              22

1  Smolen, 80 F.3d at 1282 (emphasis in original).

2       If the claimant meets the first test, the ALJ may discredit
3  the claimant's subjective symptom testimony only if he makes
4  specific findings that support the conclusion.  See Berry v.
5  Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or
6  affirmative evidence of malingering, the ALJ must provide "clear
7  and convincing" reasons for rejecting the claimant's testimony.
8  Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as
9  amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,
10 1102 (9th Cir. 2014).  The ALJ may consider, among other factors,
11 (1) ordinary techniques of credibility evaluation, such as the
12 claimant's reputation for lying, prior inconsistent statements,
13 and other testimony by the claimant that appears less than
14 candid; (2) unexplained or inadequately explained failure to seek
15 treatment or to follow a prescribed course of treatment; (3) the
16 claimant's daily activities; (4) the claimant's work record; and
17 (5) testimony from physicians and third parties.  Rounds v.
18 Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as
19 amended); Thomas, 278 F.3d at 958-59.  If the ALJ's credibility
20 finding is supported by substantial evidence in the record, the
21 reviewing court "may not engage in second-guessing."  Thomas, 278
22 F.3d at 959.

23              2.   Relevant background

24      In a December 2011 function report prepared by Plaintiff's
25 wife, Plaintiff stated that he had memory problems and was able
26 to pay attention for 10 to 15 minutes.  (AR 247.)  Plaintiff
27 reported difficulty lifting, standing, reaching, walking,
28 sitting, kneeling, talking, stair-climbing, seeing, completing

23

1   tasks, concentrating, following instructions, and using his

2   hands.  (Id.)  He also reported problems of shaking and locking

3   in his limbs.  (Id.)  As for daily activities, he stated that he

4   goes to the gym, runs errands with his wife, helps his wife take

5   his children to and from school, prepares breakfast and lunch

6   daily, makes dinner every other week, does laundry, watches his

7   children at sporting events, socializes with other parents, helps

8   at school, assists with homework, helps with the dressing and

9   feeding of his children, attends church and doctor appointments,

10  and watches television.  (AR 242-46.)

11       At the hearing in May 2013, Plaintiff testified that he

12  lived with his wife and five children.  (AR 61-62.)  He testified

13  that he stopped working in 2008 because he got bored, lost the

14  will to work, and had memory problems.  (AR 63.)  He also

15  experienced seizurelike incidents that were related to anxiety.

16  (AR 51-52.)  He testified that he could lift up to two gallons of

17  milk, sit for one hour, and stand for 15 minutes before

18  experiencing pain.  (AR 57-58.)  Plaintiff stated that he had

19  been taking prescription medication for anxiety for eight years

20  and it helped "tremendously."  (AR 59.)  Plaintiff cared for his

21  children's needs, attended their soccer and baseball games,

22  performed some household chores, prepared light meals, did

23  laundry, and went on errands with his wife.  (AR 62, 66.)  Some

24  days he felt depressed and would stay home and watch television.

25  (AR 65.)

26            3.  Analysis

27       The ALJ found that although Plaintiff's "medically

28  determinable impairments could reasonably be expected to cause

24

1  some of the alleged symptoms," his "statements concerning the
2  intensity, persistence and limiting effects of these symptoms"
3  were "not credible to the extent they are inconsistent with" the
4  ALJ's RFC assessment.  (AR 25.)  As discussed below, the ALJ
5  provided clear and convincing reasons for doing so.

6      The ALJ permissibly discounted Plaintiff's subjective
7  complaints because his daily activities were inconsistent with
8  his allegedly disabling functional limitations.  (AR 23-24.)  For
9  example, Plaintiff reported that he had trouble using his hands,
10 but he admitted that he was able to prepare meals and do laundry
11 and reported no problems with caring for his hair, shaving,
12 feeding himself, or using the toilet.  (AR 23-24, 62, 242-44,
13 247.)  Plaintiff also reported significant restrictions in
14 concentration, understanding, and following instructions.  (AR
15 24, 247.)  Yet he stated that he was able to assist with his
16 children's homework and help out at their school.  (AR 24, 243,
17 247.)  In addition, Plaintiff claimed that he was limited to
18 sitting for one hour and standing for 15 minutes, but he admitted
19 that he frequently went to the gym and attended his children's
20 sporting events.  (AR 23-24, 58-59, 62, 66, 242, 246.)  Thus, the
21 ALJ reasonably found that Plaintiff's admission about his daily
22 activities conflicted with his allegedly debilitating symptoms.
23 See Molina, 674 F.3d at 1112 (ALJ may discredit claimant's
24 testimony when "claimant engages in daily activities inconsistent
25 with the alleged symptoms" (citing Lingenfelter, 504 F.3d at
26 1040)); see also Mitchell v. Colvin, 584 F. App'x 309, 311 (9th
27 Cir. 2014) (upholding finding that claimant's allegations of
28 disabling impairments were inconsistent with daily activities

1  that included caring for children, driving, shopping, and riding

2  bicycle); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227

3  (9th Cir. 2009) (ALJ properly discounted claimant's testimony

4  because "she leads an active lifestyle, including cleaning,

5  cooking, walking her dogs, and driving to appointments").

6      The ALJ also noted that Plaintiff refused to follow the

7  treatment recommendations from his doctors.  In October 2008,

8  Plaintiff was seen in the emergency room with complaints of an

9  altered level of consciousness, hallucinations, shaking, tremors,

10  forgetfulness, inability to focus attention, and somnolence.  (AR

11  314.)  The medical record showed that Plaintiff's symptoms were

12  related to his multiple antipsychotropic medications.  (AR 314,

13  316.)  Many of Plaintiff's medications were known to cause

14  central-nervous-system side effects, including confusion,

15  hallucinations, dykinesia, somnolence, and memory impairments.

16  (AR 24, 28, 291, 295, 300, 506, 510.)  Several of Plaintiff's

17  doctors — including his treating neurologist (see, e.g., AR 291,

18  295, 300) — repeatedly advised Plaintiff to reduce consumption of

19  the psychotropic medications.  (See AR 26, 28, 291, 295, 300,

20  316, 329, 334 (treating psychiatrist noting that Plaintiff takes

21  more drugs than prescribed and advising him to stop doing so).)

22  However, Plaintiff failed to follow these recommendations.

23  During his examination with Dr. Ardebili and at his hearing,

24  Plaintiff admitted that he continued to take many of the

25  psychotropic medications.  (AR 26, 28, 56, 291, 295, 300, 316,

26  329, 334, 506, 510.)  For example, Plaintiff's doctor told him to

27  stop taking Wellbutrin (AR 329), but at the hearing he admitted

28  that he still took it (AR 56).  An ALJ may rely upon a claimant's

26

noncompliance with treatment to make an adverse credibility finding.[6]  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007); SSR 96-7P, 1996 WL 374186, at *7 (July 2, 1996) ("individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"); Smolen, 80 F.3d at 1284 (failure to follow prescribed course of treatment can be used as evidence in ALJ's claimant-credibility determination); Brown v. Astrue, No. CIV. 11-953-AC, 2012 WL 3922696, at *11 (D. Or. Aug. 20, 2012) (claimant's failure to comply with doctors' recommendations to wean off opiate pain relievers and cease marijuana use supported ALJ's adverse credibility finding), accepted by 2012 WL 3909290 (D. Or. Sept. 7, 2012).

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff only partially credible.  Because those findings were supported by substantial evidence, this Court may not engage in second-guessing.  See Thomas, 278 F.3d at 959. Plaintiff is not entitled to remand on this ground.[7]

---

[6] It is true, as Plaintiff contends (J. Stip. at 8, 22), that Dr. Ardebili stated that "[d]iscontinuing medications or medication noncompliance could lead to further deterioration in functioning."  (AR 513.)  But Dr. Ardebili's general statement was apparently based on the drugs Plaintiff was prescribed, not the greater number he was actually taking.  In any event, her broad, nonspecific statement cannot trump the express instructions of Plaintiff's treating doctor.

[7] Plaintiff again complains that the ALJ did not identify which of Plaintiff's statements he found not credible.  (J. Stip. at 29.)  But the ALJ specifically identified numerous of Plaintiff's claims and then explained why they were not credible.
(continued...)

1  **VI.  CONCLUSION**

2         Consistent with the foregoing, and under sentence four of 42

3  U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered

4  AFFIRMING the decision of the Commissioner, DENYING Plaintiff's

5  request for remand, and DISMISSING this action with prejudice.

6  IT IS FURTHER ORDERED that the Clerk serve copies of this Order

7  and the Judgment on counsel for both parties.

8

9  DATED: May 9, 2016                    _____

10                                       JEAN ROSENBLUTH
                                         U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21          [7] (...continued)

22  (See generally AR 23-24; see, e.g., id. at 24 ("The claimant also
    alleged difficulties with kneeling, talking, stair climbing,

23  seeing, completing tasks, concentration, understanding, following
    instructions, and using his hands . . . .  However, he reported

24  generally no problems with personal care, preparing meals, and
    doing laundry.").)

25

26          [8] That sentence provides: "The [district] court shall have
    power to enter, upon the pleadings and transcript of the record,

27  a judgment affirming, modifying, or reversing the decision of the
    Commissioner of Social Security, with or without remanding the

28  cause for a rehearing."

                                    28